IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KATY BERNAL-GUZMAN                    :        CIVIL ACTION NO.  24-6303 GJP
FCI Tallahassee                                     :
Tallahassee, FL                                     :
                                                            :        JURY TRIAL DEMANDED
             Plaintiff                                 :
                                                            :
UNITED STATES OF AMERICA               :
c/o United States Attorney's Office         :
615 Chestnut Street                              :
Philadelphia, PA

FEDERAL BUREAU OF PRISONS
FDC Philadelphia
Philadelphia, PA

UNITED STATES MARSHALS
SERVICE
Philadelphia, PA

WARDEN
Federal Bureau of Prisons
FDC Philadelphia
Philadelphia, PA                            :
                                                            :
JOHN/JANE DOE 1-10                       :
Employees of the Federal Bureau of Prisons :
FDC Philadelphia                                :
Philadelphia, PA                                 :
                                                            :
                                                            :
JOHN/JANE DOE 1-5                        :
Employees of the                                :
United States Marshals Service            :
Philadelphia, PA                                 :
                                                            :
             Defendants                             :


**<u>FIRST AMENDED COMPLAINT</u>**


**<u>Introduction</u>**

This case arises out of 1) constitutional violations arising from the deliberate placement of plaintiff, who is an intersex Spanish speaking female, into a male housing block with a male cell mate at FDC Philadelphia while a pretrial detainee, for nearly two weeks and who, as a result, suffered multiple and serious sexual assaults and injuries violating the due process clause of the Fifth Amendment; 2) failure to have competent and qualified Spanish speaking employees as a standard practice in the facility or cell blocks which is a constitutional violation and a safety risk; 3) severe lack of security staffing to safely run the facility to prevent these risks and ensure a constitutionally safe environment; and 4) lack of basic medical care for intersex inmates or detainees constituting constitutionally dangerous conditions at both FDC Philadelphia and FCI Tallahassee.

Plaintiff, an intersex female pretrial detainee, was incorrectly designated within the federal prison system as a male without a physical examination to confirm her assertion that she is a female, and in violation of its own rules and regulations regarding intersex individuals. It is believed and therefore averred that such housing with males was a deliberate act involving an individual who prison guards mocked for her appearance without further investigation. This wrongful designation has had serious and permanent consequences for plaintiff, both physical and emotional.

Plaintiff, who speaks only Spanish, was double celled with a violent male inmate. She was brutally raped and assaulted by her cellmate for 13 days, without security staff intervention, until another Spanish speaking inmate heard her pleas for help and alerted a guard who eventually notified medical, where her female gender was confirmed.

## Parties

1.      Plaintiff Katy Bernal Guzman, an intersex female by birth, is a current resident of FCI Tallahassee, in Tallahassee, Florida.  The acts she complains of occurred in the Eastern District of Pennsylvania, but the medical failures appear to continue in her current placement.

2.      Defendant is United States of America c/o United States Attorney's Office, Department of Justice for itself and the acts of the Federal Bureau of Prisons, and the United States Marshals Service.

3.      Defendant is Federal Bureau of Prisons, with a Federal Detention Center in Philadelphia, PA.  The Federal Bureau of Prisons is an agency within the United States Department of Justice and employs staff under its supervision (federal prison officials)

4.      Defendant is United States Marshals Service with an office in Philadelphia, PA. The United States Marshals Service is an agency within the United States Department of Justice and employs staff under its supervision.

5.      Defendant Warden FDC Philadelphia is the supervising warden or wardens at the time of the events set forth in this Complaint.

6.      Defendants John/Jane Doe 1-10 (BOP) an employee at all relevant times of the Bureau of Prisons as a guard/corrections officer, and/or supervisor and acting under color of federal authority, resides in the Eastern District of Pennsylvania.  Defendants are also sued in his or her individual capacity.

7.      Defendants John/Jane Doe 1-5 (USM), an employee at all relevant times of the US Marshals Service as a US Marshal, and/or supervisor and acting under color of federal authority, resides in the Eastern District of Pennsylvania.  Defendants are also sued in his or her individual capacity.

**Jurisdiction and Venue**

8.      This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, the United States Constitution and the Bivens doctrine.

9.      Venue is proper in this district because the actions complained of occurred in this district.

## **Factual Background**

10.     In the fall of 2022 plaintiff was arrested on a Maryland state drug charge, granted bail and released.  This was her first arrest.

11.     Subsequently, the federal government adopted and prosecuted the case in the District of Maryland.

12.     Post federal adoption of the case, on January 20, 2023, she was arrested at her home in Maryland by federal officials and incarcerated in a Maryland jail in a cell by herself.  At the time of the arrest, she was wearing a dress, high heels, hair extensions, nail polish and makeup.

13.     Federal prison policy and procedure contains specific instructions regarding intersex inmates and detainees.  It is believed and therefore averred that those policies and procedures were not followed either in Maryland or Philadelphia, and were in fact violated.

14.     Upon receiving information from the pretrial detainee, or any other source, that the individual entering custody is either transgender or intersex, institution staff managing pretrial offenders must refer cases to the Transgender Executive Counsel ("TEC") for review.  Any TEC recommendations concerning pretrial inmates must be coordinated with the appropriate United States Marshals Service District Office.  No record of such referral is in plaintiff's medical file available to plaintiff.

15.     In making housing unit assignments the intersex detainee's own views with respect to her own safety must be given serious consideration.

16.     Plaintiff is 5'7" tall and weighs approximately 180 pounds, she has a husband and a young daughter.  The arresting officers did not allow her to change out of her short dress.

17.     Eight days later on February 1, 2023, she was transported by John Does 1 and 2 USM employed by the U.S. Marshals from Maryland to the FDC Philadelphia, a Federal Bureau of Prisons facility.

18.     At the FDC Philadelphia entrance point, she was called a "faggot" by John Does 1 and 2 BOP, the admitting Corrections Officers ('COs'), and ordered to change her clothes.

19.     At that point the admitting personnel, by their crude language, made judgments about plaintiff based upon their own bias and prejudices and therefore subsequently violated prison policies by not following the proper procedure to ensure plaintiff's safety and she was housed with males.

20.     She received no medical exam and was not strip searched as protocol requires.  No female officers were present.  She told John Does 1 and 2 BOP, the admitting COs, several times in Spanish that she was a female.  She was ignored.  There was no effort to determine her gender prior to her being placed in an FDC Philadelphia male cell block.

21.     It is believed and therefore averred she was not subjected to a required PREA screen as having characteristics of an inmate or detainee with a higher than normal likelihood to be a victim of sexual assault, despite the John Does 1 and 2 BOP CO's offensive terminology of "faggot" recognizing crudely that such screening was in fact necessary, and that further investigation should have been done.

22.     None of the COs giving her orders spoke Spanish.

23.     None of the COs listened, or they ignored her, when plaintiff told them in Spanish she was a female.

24.     Plaintiff was placed on a male cell block by John Doe 3 BOP and housed in a cell with another male.

25.     It is believed and therefore averred that said male inmate had a known history of violence.

26.     From the time she arrived until nearly two weeks later, she was daily denied safety and security from her violent cellmate and denied medical care by the John Does 4-6 BOP COs; she was threatened, sexually assaulted and physically abused by her cellmate, a violent male inmate, at all hours of the day and night, without any John Doe BOP CO intervening.  She was in constant fear.  No John Doe BOP CO understood her pleas for help, and/or ignored her pleas for help.  No John Doe BOP CO responded to help her.

27.     Federal prison rules forbid sexual contact between inmates or detainees and require it to be reported by staff who are aware of it.  It is believed and therefore averred that John Does 1-10 BOP and staff were aware of the assaults on plaintiff.

28.     It is believed and therefore averred that no reports were made by prison staff at FDC Philadelphia who knew, or had reason to know, of such assaults and made no reports.

29.     Her cellmate promised to kill her on Valentine's Day, February 14, after he once again fulfilled his sexual fantasies.

30.     In total she was celled approximately 288 hours with that male inmate.

31.     Plaintiff was terrorized, sexually assaulted, raped, molested, beaten, and had her head battered against the metal bunk bed by her male cellmate.  The edge of the metal bunk

caused a large wound to open on her head. These assaults were severe and repetitive, and caused direct contact with plaintiff's genitals, breasts, mouth causing physical pain.

32.     Plaintiff cried and asked for help in Spanish multiple times. There was no response from corrections officers.

33.     Late on February 13th or early February 14th another inmate housed near plaintiff heard her crying. That inmate spoke Spanish and asked what was wrong, she told him.

34.     That inmate called out for a BOP CO and explained in English what was happening, after some resistance a supervisor was summoned who eventually decided to take plaintiff to medical.

35.     A physical exam was conducted by medical for the purpose of determining plaintiff's gender. That exam determined that plaintiff was indeed female as she had said all along.

36.     The medical record entry notes "hermaphrodite" a long discarded stigmatizing term formerly used to describe an intersex individual.

37.     A rape kit was not completed at any time after the assault. It is believed and therefore averred that no sexual assault protocol was followed.

38.     Testing for STDs was not performed, which has endangered her health.

39.     Her head wound was not properly treated and it became infected.

40.     Plaintiff was immediately relocated to the female unit of FDC Philadelphia after the physical exam by medical for the purpose of confirming gender.

41.     The head injury inflicted by the male inmate became more infected without treatment. The wound formed a large keloid-type erosion of her scalp and appears to contain pus. She has constant headaches and other symptoms of infection which continue.

42.     It is believed and therefore averred that the Federal Bureau of Prisons pursuant to PREA requires allegations of sexual assault and rape as described above be reported centrally and investigated immediately.

43.     Plaintiff was interviewed by investigators at some unknown time.

44.     It is believed and therefore averred that the PREA procedure was not followed because as late as the summer of 2024 it was relayed to counsel that no investigation was complete because plaintiff had not filed an SF 95 Federal Tort Claims Act form.  On the contrary no "form" is required, however a "form" has been filed for both Federal Bureau of Prisons and United States Marshals.

45.     Sometime after plaintiff was moved to the female block, at least three BOP prison officials presented a document to her written in English, which was read to her by a prison employee in the kitchen who spoke some Spanish.  She was then asked by the BOP officials to sign the document and assured it was OK to sign it.  She did not sign.

46.     Plaintiff, who did not attend high school, believes and therefore avers this was a document relating to what had occurred to her as set forth herein, but the broken Spanish spoken by the prison employee and the words conveyed were not well understood.

47.     After her head wound did not heal and she suffered headaches and fever, she was eventually sent to outside medical where she was given antibiotics and told to return for follow-up.  She was not taken for follow-up.  That injury is still not resolved and FCI Tallahassee has not sent her to outside medical for the injury.

48.     The US Marshal's prison transport log to outside medical in Philadelphia listed her as a male inmate which transport was months after FDC Philadelphia confirmed plaintiff is female.  "Male inmate" is reflected in outside medical records derived from transport

documentation by the facility. Outside medical did not speak Spanish and used an online translator to try to communicate.

49. No BOP personnel or the US Marshal has ever contacted outside medical to correct the error. Outside medical, contracted for prison care, would not correct the record for plaintiff's representative.

50. Upon initial admission to FDC Philadelphia, and upon admission to the female unit, Plaintiff did not receive appropriate medical care from John/Jane Does 7-9 BOP for intersex detainees in that, for example, hormones necessary to her health and survival such as cortisol and aldosterone, were not evaluated or administered for a number of weeks, and even then the hormones given were improperly switched to estradiol pills, an estrogen hormone, which is not an appropriate therapy for a number of reasons.

51. Estradiol pills carry the inherent risk of blood clots, high blood pressure, high cholesterol, migraine headaches, and diabetes among other serious health effects, some or all of which have manifested in plaintiff when those issues had not previously been experienced.

52. Plaintiff has developed migraines and serious, seemingly uncontrolled, diabetes since receiving estradiol, at great risk to her health which is continuing.

53. After several months on the female unit as a detainee, plaintiff was transported to Maryland for sentencing, and returned to FDC awaiting designation.

54. Once designated, despite the prior conduct of the BOP housing her with males, the recognition of that terrible mistake and the knowledge plaintiff is a female, the John/Jane Doe 1-10 BOP by and through the US Marshals' John/Jane Doe 3-5 USM, had her transported to FCI Tallahassee in Florida by vehicle as the only female with males, other females were

transported separately.  It is believed and therefore averred that that transport with males was deliberate.  Plaintiff was in constant fear during that long trip.

55.    As a result of these events and actions or failures to act, plaintiff has suffered severe and ongoing physical and mental injuries in excess of one million dollars.

56.    Although some counseling has been offered to plaintiff it is inadequate to address the harm suffered.

57.    The Federal Bureau of Prisons has recognized that sexual abuse of inmates is a significant problem within its institutions.

58.    The Federal Bureau of Prisons has recognized that sexual abuse of inmates is one of the most serious forms of misconduct.  The Federal Bureau of Prisons is well aware of the mandates of PREA.

59.    Plaintiff exhausted her administrative remedy requirements under the Prison Litigation Reform Act facility grievance system, pursuant to the Act and the case law; and cooperated in the PREA investigation by FDC Philadelphia, which FDC Philadelphia appears to be treating as the tort claim investigation.  Plaintiff has very recently filed a supplemental SF95 Federal Tort Claims form and therefore has not asserted tort claims at this time.  No offer, or other remedy or denial under the FTCA of which counsel is aware has been made or received. The six months allowed for investigation has long passed and under the FTCA plaintiff may proceed with her complaint.

60.    In this case, the Federal Bureau of Prisons failed to exercise ordinary care, in fact disregarded the statements of plaintiff that she was female and failed to determine the actual gender of plaintiff before housing her with males.

61. The Federal Bureau of Prisons breached its duty to protect the safety of plaintiff in its custody. The Federal Bureau of Prisons actually created her vulnerability leading to injury.

62. It is believed and therefore averred that the above described failures were of unconstitutional dimension and were substantial factors and the proximate cause in bringing about the injuries suffered by plaintiff.

**COUNT ONE**
**Constitutional Claims**
**All Defendants**

63. .Plaintiff repeats and realleges paragraphs 1 through 62 as though fully set forth herein.

64. Federal prison officials and employees and federal marshals and employees are liable under the Fifth Amendment to the United States Constitution for mistreatment of pretrial detainees, including pretrial detainees who are intersex.

65. Federal prison officials are liable under the Fifth Amendment to the United States Constitution for acting with deliberate indifference to excessive risk to inmates' health or safety, which includes placing a female into a cell with a male, failure to protect her by failing to intervene and treat injuries received as a result and by transporting a female inmate long distances with male inmates.

66. Plaintiff asserts a failure to protect claim with respect to all CO's failure to intervene in the daily assaults against her by her male cellmate when she begged for help in Spanish and by the deliberate transport of plaintiff, a female, with males.

67. By the fact that the risk was obvious, in the context of the Fifth Amendment failure to protect claim, it can be concluded that prison officials and US marshals officials knew of the substantial risk.

68.     Federal law and the United States Constitution require that inmates receive adequate medical care.

69.     Federal prison officials violated the Americans with Disabilities Act, as the 2009 expansion of the ADA included impairments to reproductive and endocrine functions. Gender dysphoria is also protected under the ADA.  There is no exclusion under the ADA for intersex individuals.

70.     The ADA relies on both the Fourteenth Amendment and the Commerce Clause of the Constitution as its constitutional basis.

71.     Plaintiff was denied the benefits of defendant's medical service.

72.     The denial of medical services was by reason of her disability.

73.     Federal prison officials at FDC Philadelphia and US Marshals acted with deliberate indifference to plaintiff's health and safety because they knew that female pretrial detainees, particularly intersex inmates, faced a substantial risk of serious harm by, for example, being placed with a male cellmate on an all male floor and disregarded that risk by failing to take reasonable measures to protect her as described in this complaint or transporting a female inmate with males.  Federal prison officials failed to intervene.  It was only when another inmate insisted she be protected that she was rescued.

74.     Being violently assaulted in prison as a pretrial detainee is cruel and unusual punishment and not part of any penalty a person presumed innocent must pay for yet-to-be determined guilt.  It is a clearly established due process right that prison officials have a duty to protect detainees from violence at the hands of others.

75.     Federal prison officials violated the Equal Protection Clause of the Fifth Amendment because the lack of competent Spanish speakers on staff restricted plaintiff's ability

to communicate within the men's side of the prison about her dangerous housing situation i.e. with males and a male cellmate, and the lack of qualified Spanish speakers also violates the Eighth Amendment requiring humane conditions of confinement.

76.    The violation of the Prison Rape Elimination Act standards, as occurred here, assists in demonstrating that plaintiff's clearly established constitutional rights have been violated.

77.    Both the US Marshals Service personnel and Federal Bureau of Prison officers and the agencies acted unreasonably.

78.    Supervisory officials of the Federal Bureau of Prisons and the US Marshals Service, who were aware of policies and procedures relating to intersex individuals and the obligations thereunder, routinely disregarded or ignored their specific obligations to ensure enforcement, or to discipline those who fail to enforce them, leading to policies and procedures, including under PREA which in effect are window dressing, leading to the types of constitutional harm described herein.  Defendants created the opportunity that caused plaintiff's harm.

79.    The actions of admitting BOP officers and placement with males indicates plaintiff's treatment was gender-motivated, evidenced by their language.  Placing a female in custody with a male constitutes a hate crime under the Violence Against Women Act.

80.    Transgender and intersex inmates within the penal system constitute over 16% of inmates who identify as such.  It is likely that there are many more who simply fear disclosure, foregoing proper medical treatments.

81.    Being sexually assaulted while incarcerated and egregiously locked in a cell with a male inmate and transported with male inmates—and therefore in a position of helplessness, lack of autonomy and agency, and isolation, including no guard understanding, or ignoring, her cries for help in Spanish—caused plaintiff's ongoing injuries and damages to be particularly severe and long-

lasting. She has sustained serious damages, including humiliation, severe emotional harms, psychological trauma, physical pain, and damaged relationships with family and friends.

82.     As a result plaintiff suffered physical and mental and emotional harm as described herein and physical and mental injuries in excess of $1,000,000.

WHEREFORE, it is respectfully requested that judgment be entered in favor of plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies regarding intersex inmates, and particularly for pretrial detainees, for immediate appropriate medical care for plaintiff's injuries and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

<u>COUNT TWO</u>
**Constitutional Claims**
**All Defendants Except United States of America and the Agencies**

83.     Plaintiff repeats and realleges paragraphs 1 through 82 as though fully set forth herein.

84.     This Count asserts a <u>Bivens</u> action. <u>Bivens</u> established that the victims of a constitutional violation by a federal official have a right to recover money damages against the official in federal court despite the absence of any statute conferring such a right.

85.     Defendant personnel of the US Marshals Service and the Federal Bureau of Prisons acting within the scope of employment and under color of federal law, statute, ordinance or regulation violated the equal protection component of the due process clause of the Fifth Amendment because plaintiff suffered harm as described based on her sex, including sexual assault that was preventable; suffered harm because of the failure to have Spanish speakers in a facility with numerous Hispanic inmates and detainees, and because the medical treatment or

lack thereof was so inadequate that it violated the Eighth Amendments' proscription against the infliction of cruel and unusual punishment.

86.    Being sexually assaulted while incarcerated and egregiously locked in a cell with a male inmate—and therefore in a position of helplessness, lack of autonomy and agency, and isolation, including no guard understanding, or ignoring, her cries for help in Spanish—caused plaintiff's ongoing injuries and damages to be particularly severe and long-lasting.  She has sustained serious damages, including humiliation, severe emotional harms, psychological trauma, physical pain, and damaged relationships with family and friends.

87.    As a result plaintiff suffered harm as described herein and physical and mental injuries in excess of $1,000,000.

WHEREFORE, it is respectfully requested that judgment be entered in favor of plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.


### COUNT THREE
**Constitutional Claims**
**All Defendants Except United States of America for Supervisory Liability**

88.    Plaintiff repeats and realleges paragraphs 1 through 87 as though fully set forth herein.

89.    This Count asserts a Bivens action.  Bivens established that the victims of a constitutional violation by a federal official have a right to recover money damages against the official in federal court despite the absence of any statute conferring such a right.

90.     Correctional Officers on the unit where plaintiff, a female, was housed with males were not adequately supervised, trained or disciplined by their superiors.

91.     Supervisors acted with deliberate indifference to the constitutional rights of a Spanish speaking female inmate who was housed with a male and in fear for her life. Those supervisors failed to provide adequate training, supervision and discipline of COs on the unit and thereby caused the deprivation of clearly established constitutional rights of plaintiff, including her rights under the Fifth and Eighth Amendments to the Constitution.

92.     Had defendant supervisors not provided grossly inadequate training, supervision and discipline of the unit COs, plaintiff, a female, would not have been housed with males, nor would she have been repeatedly sexually assaulted and addressed as, for example, "faggot." Unit COs and their supervisors evident prejudices and ignorance outweighed their duty to follow regulations and the law to care for an inmate who had been wrongly designated as male.

93.     Supervisors had actual and/or constructive notice of sexual abuse of a female on a male unit.

94.     This negligent, reckless, and/or deliberately indifferent conduct under color of federal law violated their duty to supervise unit COs.

95.     Being sexually assaulted while incarcerated and egregiously locked in a cell with a male inmate—and therefore in a position of helplessness, lack of autonomy and agency, and isolation, including no guard understanding, or ignoring, her cries for help in Spanish—caused plaintiff's ongoing injuries and damages to be particularly severe and long-lasting. She has sustained serious damages, including humiliation, severe emotional harms, psychological trauma, physical pain, and damaged relationships with family and friends.

96.     As a direct and proximate result of defendant supervisor's actions, plaintiff suffered harm as described herein and physical and mental injuries in excess of $1,000,000.

WHEREFORE, it is respectfully requested that judgment be entered in favor of plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

## COUNT FOUR
### Federal Tort Claims Act Claims
### Against the United States of America, the Federal Bureau of Prisons and the United States Marshal's Service

97.     Plaintiff repeats and realleges paragraphs 1 through 96 as though fully set forth herein.

98.     Defendants' servants were acting within the scope of office or employment, under circumstances where the defendants, if a private person, would be liable to the claimant in accordance with the law of the Commonwealth of Pennsylvania.

99.     The individuals were federal employees at all relevant times in the complaint.

100.    Defendant United States of America was on notice and failed to take action to prevent harm to plaintiff by its employees.

101.    Defendants had a duty to plaintiff who was in their custody to prevent threats to her safety and to protect her from harm.

102.    Defendants' and the Warden's failure to act was such that co-workers and other supervisors knew or should have known what was occurring when federal employees housed a female detainee in the same cell as a male on the male side of the prison.  In so doing, admission procedures were not followed to confirm the sex of the inmate by a medical doctor.  The plaintiff who spoke only Spanish was ignored for seven days as she protested her housing.

103.     Defendants were negligent in their training, retention and supervision of their employees.

104.     Defendants were negligent in that they failed to either have procedures in place to prevent the housing of females with males, or they ignored them.

105.     As a result of defendant's negligence, plaintiff has suffered physical and mental injuries in excess of the jurisdictional amount.

WHEREFORE, it is respectfully requested that judgment be entered in favor of plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

**COUNT FIVE**
**Federal Tort Claims Act Claims**
**Negligent Supervision and Discipline**
**Against the United States of America, the Federal Bureau of Prisons and the United States Marshal's Service**

106.     Plaintiff repeats and realleges paragraphs 1 through 105 as though fully set forth herein.

107.     BOP policy 5334.12 is believed and therefore averred to be in effect in February 2023, requiring federal prisons to adopt "zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and to provide guidelines to address…illegally sexually abusive behavior…"  The United States owes a duty of care to federal prisoners under 18 U.S.C. § 4042 which states in part that the Bureau of Prisons shall "provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States."

108. Under PREA "policies and rules for handling inmate complaints of sexual harassment and sexual assault leave bureau of Prisons officers no discretion as to whether to follow those procedures.

109. The John Doe superiors and co-workers who knew or should have known of their supervisees failure to act were negligent in failing to report that activity to timely cause appropriate housing and medical care to be given. No procedures were in place, nor could there be, to avoid delay and failure to comply with and react to, PREA guidelines.

110. It was within the scope of their employment to make such reports.

111. Defendants' supervisors had a duty to control their employees and prevent harm to plaintiff which duty was breached.

112. Defendants' supervisors and co-workers were negligent in failing to listen and observe and respond timely to the housing conditions and medical needs of plaintiff.

113. The failure of those employees to act was such that co-workers and other supervisors knew or should have known what was occurring.

114. Defendants if private persons, would be liable to the claimant in accordance with the law of the Commonwealth of Pennsylvania.

115. As a result of defendants' negligence, plaintiff has suffered physical and mental injuries in excess of the jurisdictional amount.

WHEREFORE, it is respectfully requested that judgment be entered in favor of plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

**COUNT SIX**
**Federal Tort Claims Act Claims**
**Against the United States of America, the Federal Bureau of Prisons and the United States**
**Marshal's Service for Negligent Infliction of Emotional Distress**

116.     Plaintiff repeats and realleges paragraphs 1 through 115 as though fully set forth herein.

117.     The defendants had a duty of care to plaintiff, a female, who was wrongfully housed with males at FDC Philadelphia.

118.     Defendants knew or should have known that a female detainee housed with a male inmate endangered the female detainee and that the male inmate was likely to assault the female.

119.     Despite actual notice or constructive notice that such housing could result in harm to a female detainee, defendants failed to prevent that assault by housing plaintiff with a male inmate.  Defendant employees of the United States were acting within the scope of their employment when they engaged in this act or omission and breached their duty of care owed to plaintiff by failing to protect her which unreasonably endangered plaintiff's physical safety.

120.     These acts and/or omissions constituted extreme and outrageous conduct and disregarded a substantial probability of causing severe emotional distress to plaintiff causing both psychological harm and physical injuries.

          WHEREFORE, it is respectfully requested that judgment be entered in favor of plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies regarding intersex inmates, and particularly for pretrial detainees, to assign a Spanish speaking employee to each block 24/7, to undergo training to recognize and properly supervise intersex inmates without using derogatory terminology, for appropriate medical care for intersex

detainees and inmates for declaratory and injunctive relief and for attorney fees, other costs and expenses deemed appropriate by the court.

Respectfully submitted,

_____
Lynanne B. Wescott, Esquire
PA ID #52928
The Wescott Law Firm P.C.
1221 Locust Street, Suite 301
Philadelphia, PA   19107
Phone: 215-545-0324
Lwescott@wescottlaw.net

_____
Margaret M. Grasso, Esquire
PA ID #75939
Law Office of Margaret M. Grasso
325 Chestnut Street, Suite 800
Philadelphia, PA   19106
Phone: 215-280-5202
Maggie@maggiegrassolaw.com