IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATY BERNAL-GUZMAN<br>FCI Tallahassee<br>Tallahassee, FL | : | CIVIL ACTION NO.  24-6303 GJP |
| | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff | : | |
| | : | |
| UNITED STATES OF AMERICA<br>c/o United States Attorney's Office<br>615 Chestnut Street<br>Philadelphia, PA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| FEDERAL BUREAU OF PRISONS<br>FDC Philadelphia<br>Philadelphia, PA | : | |
| | : | |
| | : | |
| | : | |
| FRANK MUSOLINO<br>Federal Bureau of Prisons<br>Philadelphia, PA | : | |
| | : | |
| | : | |
| | : | |
| UNITED STATES MARSHALS<br>SERVICE<br>Philadelphia, PA | : | |
| | : | |
| | : | |
| | : | |
| WARDEN<br>Federal Bureau of Prisons<br>FDC Philadelphia<br>Philadelphia, PA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| U.S. MARSHAL<br>Philadelphia<br>Philadelphia, PA | : | |
| | : | |
| | : | |
| | : | |
| UNITED SECURITY INC.<br>40 Shrewsbury Ave.<br>Red Bank, NJ   07701-1130 | : | |
| | : | |
| | : | |
| | : | |
| JOHN/JANE DOE 1-10[1] | : | |

---

[1] It is typical to indicate a number of John Does as representative of unknown parties, as plaintiff did here and did the same when describing actions of unknown parties in the body of the Complaint. Through no fault or for lack of due diligence on Plaintiff's part, Plaintiff is unable to identify certain John Does at this time.  On January 5, 2025,  plaintiff filed a motion to conduct limited John Doe Discovery to determine the names of the John Doe

Employees of the Federal Bureau of Prisons :
FDC Philadelphia                                    :
Philadelphia, PA                                    :

Defendants. (ECF#7).  On February 26, 2025, this Court granted Plaintiff's motion in part and ordered the United States to provide the names of John Doe Defendants.

In response to this Court's Order, the United States identified certain John Does on April 1, 2025 including medical, misunderstanding the claim as against medical when it was against BOP for not taking Plaintiff to medical;  Frank Musolino as the Community Supervision Services Supervisor for R&D on-duty on February 1, 2023, (and on April 28, 2025, the government disclosed Musolino as responsible for making the determination to place Plaintiff on a male cell block and indicating he may have been the only BOP person on duty to receive, check in, and escort Plaintiff); the private transport company contracted to the US Marshal that brought Plaintiff to Philadelphia from Baltimore; and disclosing that various methods of transport took Plaintiff to Tallahassee, but have not yet identified John Doe Marshals.

With regard to BOP John Does 4-6 who are alleged by Plaintiff to have denied Plaintiff safety and security from her violent cellmate and denied her medical care on a daily basis, the United States has not identified any BOP employees specifically, but during a conference call on April 29, the government disclosed that they have the names of fourteen (14) BOP employees that worked on the block on which plaintiff was housed over the relevant time frame, but are not currently at liberty to provide the 14 names to the defense.  The government will make the request to disclose to the BOP. Plaintiff avers that, at a minimum, BOP John Doe defendants 4-6, are among  the 14 BOP employees on the undisclosed list.

2

                                                :
                                                :
JOHN/JANE DOE 1-5                               :
Employees of the                               :
United States Marshals Service                 :
Philadelphia, PA                               :
                    Defendants                 :

## FIRST AMENDED COMPLAINT

### Introduction

This case arises out of 1) constitutional violations arising from the placement of plaintiff, who is an intersex Spanish-only speaking female, into a male housing block with a male cell mate at FDC Philadelphia while a pretrial detainee, for nearly two weeks and who, as a result, suffered multiple and serious sexual assaults and injuries violating the due process clause of the Fifth Amendment; 2) FDC Philadelphia's failure to have competent and qualified Spanish speaking employees or Spanish language materials in cell blocks it knows houses Spanish-only speaking inmates which violates inmates' 8th and 14th amendment rights, and is a safety risk including for medical care as a language barrier can lead to misdiagnoses and due process violations in disciplinary or other hearings; 3) severe lack of staffing to safely run the facility and ensure a constitutionally safe environment; and 4) lack of basic medical care for intersex inmates or detainees constituting unconstitutional health care conditions at both FDC Philadelphia and FCI Tallahassee among other conditions described herein.

Plaintiff, an intersex female pretrial detainee, was incorrectly designated within the federal prison system as a male without a physical examination to confirm her assertion that she is a female, and in violation of the prison system's own required rules and regulations regarding intersex individuals. This wrongful designation has had serious and permanent consequences for plaintiff, both physical and emotional.

3

Plaintiff was double celled with a violent male inmate. She was brutally raped and assaulted by her cellmate for 13 days, without security staff intervention, until another Spanish speaking inmate heard her pleas for help and alerted a guard who eventually notified medical, which confirmed her female gender. She was then immediately moved to a female block.

**Parties**

1.      Plaintiff Katy Bernal Guzman, an intersex female by birth, with no male body parts, is a current resident of FMC Carswell in Fort Worth, Texas. Acts she complains of occurred in the Eastern District of Pennsylvania, but the medical and protective failures continue in her recent placements which include FCI Tallahassee, Florida and FMC Carswell, TX.

2.      Defendant is United States of America c/o United States Attorney's Office, Department of Justice for itself and representing the agencies for the acts of the Federal Bureau of Prisons, and the United States Marshals Service.

3.      Defendant is Federal Bureau of Prisons, employees of which are located at FDC Philadelphia, PA. The Federal Bureau of Prisons is an agency within the United States Department of Justice and employs staff under its supervision (federal prison officials).

4.      Defendant is United States Marshals Service with an office in Philadelphia, PA. The United States Marshals Service is an agency within the United States Department of Justice and employs staff under its supervision.

5.      Defendant Warden FDC Philadelphia is the supervising warden or wardens at the time of the events at FDC Philadelphia set forth in this Complaint, is a federal employee and acting within the scope of his office.

4

6.     Defendant U.S. Marshal Philadelphia is the supervising Marshal in Philadelphia at the time of the events set forth in this Complaint, is a federal employee and acting within the scope of his office.

7.     Defendant United Security, Inc. "USI" is a New York corporation authorized to do business in Pennsylvania and is a government contractor hired in this case to transport Plaintiff, a pretrial intersex detainee, from Maryland to FDC Philadelphia.  It is believed and therefore averred that federal government employees, specifically the US Marshal, directly supervises the daily activity of USI and its personnel in its transport duties related to interfacility transport, including related procedures and paperwork.  Both USI and the US Marshal have a duty to ensure the paperwork of the transported person is accurate and complete.

8.     Defendant Frank Musolino identified by the government by letter of April 28, 2025, is believed and therefore averred to be a male employee at all relevant times of the Bureau of Prisons at FDC Philadelphia holding the position of Community Supervision Services Supervisor for Research and Development.  Mr. Musolino is the officer who conducted the visual search of the female Plaintiff upon her arrival at FDC Philadelphia in February 2023.

9.     Defendants John/Jane Doe 1-10 (BOP) an employee at all relevant times of the Bureau of Prisons as a guard/corrections officer, and/or supervisor and acting under color of federal authority, resides in the Eastern District of Pennsylvania.  Defendants are also sued in his or her individual capacity.

10.     Defendants John/Jane Doe 1-5 (USM), an employee at all relevant times of the US Marshals Service as a US Marshal, and/or supervisor and acting under color of federal authority, resides in the Eastern District of Pennsylvania.  Defendants are also sued in his or her individual capacity.

**Jurisdiction and Venue**

11.     This action arises under the United States Constitution, the <u>Bivens</u> doctrine and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (which the government acknowledges that on May 25, 2025, those claims become ripe).  The harm is continuing and the discovery rule also applies for the government's failure to disclose individuals known to them involved in this matter.

12.     Venue is proper in this district because the actions complained of began and occurred in this district, and are continuing.

**Factual Background**

13.     In the fall of 2022 Plaintiff, then in her 30's, in a long term relationship with a man she considers her husband and together raising a teenage child, was arrested on a Maryland state drug charge, granted bail and released.  This was her first arrest.

14.     Subsequently, the federal government adopted and prosecuted the state case in the District of Maryland.

15.     Post federal adoption of the case, on January 20, 2023, Plaintiff was arrested at her home in Maryland by federal officials and incarcerated in a Maryland jail in a cell by herself. Plaintiff is 5'7" tall and weighs approximately 180 pounds.  At the time of the arrest, she was wearing a dress, high heels, hair extensions, nail polish and makeup. The arresting officers did not allow her to change out of her short dress.

16.     Federal prison policy and procedure contains specific instructions regarding intersex inmates and detainees.  It is believed and therefore averred that those policies and procedures were not followed either in Maryland or Philadelphia, and were in fact violated.

6

17. Upon receiving information from the pretrial detainee, or any other source, that the individual entering custody is either transgender or intersex, institution staff managing pretrial offenders must refer cases to the Transgender Executive Counsel ("TEC") for review. Any TEC recommendations concerning pretrial inmates must be coordinated with the appropriate United States Marshals Service District Office. No record of such referral is in plaintiff's medical file or any file available to plaintiff.

18. In making housing unit assignments an intersex detainee's own views with respect to her own safety must be given serious consideration.

19. The government disclosed, on April 1, 2025, pursuant to the Court's Order for discovery, that eight days after her arrest in Maryland, on February 1, 2023, instead of transport by the United States Marshal, Plaintiff was transported by two employees of United Security, Inc., a government contractor, from Maryland to the FDC Philadelphia, a Federal Bureau of Prisons facility.

20. The transport officers were Andre Delaney and Ron Carter who are believed and therefore averred to be directly supervised in the performance of their duties at each end of the transport by federal government personnel, including responsibility for accurate paperwork.

21. At the FDC Philadelphia entrance point, Plaintiff was called a "faggot" by John Does 1 and 2 BOP, the admitting Corrections Officers ('COs"), and ordered to change her clothes. On April 1, 2025, defendant USA disclosed it does not know the identity of John Doe 1 and 2 BOP or who admitted plaintiff to FDC Philadelphia.

22. Frank Musolino who is believed and therefore averred to be a male, and who serves as Community Supervision Services Supervisor for Research and Development with no known contact with the required TEC or the US Marshal's designated transport company as to

7

the accuracy of the paperwork brought to the BOP, conducted a visual search of a female detainee, which is improper for a male to perform.

23.     At that point the admitting personnel, by their crude language, made judgments about plaintiff based upon their own bias and prejudices, violated prison policies by not following the proper procedure to ensure plaintiff's safety and she was subsequently housed with males instead of being sent to medical or single celled until that could occur.

24.     Plaintiff received no medical exam and was not strip searched as protocol requires.  No female officers were present.  She told John Does 1 and 2 BOP, the admitting COs, several times in Spanish that she was a female.  She was ignored.  There was no effort to effectively determine her gender prior to her being placed in an FDC Philadelphia male cell block based on inappropriate visual search and unreliable paperwork.

25.     It is believed and therefore averred plaintiff was also not subjected to a required PREA screen as having characteristics of an inmate or detainee with a higher than normal likelihood to be a victim of sexual assault, despite the John Does 1 and 2 BOP CO's offensive terminology of "faggot" recognizing crudely that such screening was in fact necessary, and that further investigation should have been done.

26.     None of the COs giving her orders spoke Spanish.

27.     None of the COs listened, or they ignored her, when plaintiff told them in Spanish she was a female.

28.     Plaintiff was placed on a male cell block by John Doe 3 BOP and housed in a cell with another male.  On April 1, 2025, defendant USA disclosed it does not know who escorted plaintiff to the male cell block.

29. It is believed and therefore averred that said male inmate had a known history of violence.

30. It is believed and therefore averred that there is video of the block Plaintiff was housed on and video of her intake. This video is believed and therefore averred to have been collected, referenced in, and contained in, any PREA investigation or other investigation of this matter.

31. Defendant USA disclosed on April 1, 2025, that cell block placement determinations are generally made by R&D, and identified the R&D supervisor on duty February 1, 2023 as Frank Musolino, but did not know at that time if he had involvement in the male block assignment decision. According to prison regulations TEC is supposed to determine the issue. Musolino acted contra to the regulations for housing intersex inmates as described in paragraph 17. It was not until April 29, 2025 did the government disclose that decisions made by Musolino resulted in male block placement.

32. From the time she arrived until nearly two weeks later, she was daily denied safety and security from her violent cellmate on the male block and denied medical care by the John Does 4-6 BOP COs and others; she was threatened, sexually assaulted and physically abused by her cellmate, a violent male inmate, at all hours of the day and night, without any John Doe BOP CO intervening. She was in constant fear. No John Doe BOP CO understood her pleas for help, and/or ignored her pleas for help. No John Doe BOP CO responded to help her.

33. Defendant USA disclosed on April 1, 2025, that it could not specifically identify John Does 4-6 BOP, but that approximately 10-15 COs, still unidentified, covered shifts on plaintiff's floor during the relevant time frame. However, any CO on shift during the relevant

9

time frame denied plaintiff safety and security as she was a female on a male floor housed with a male and no CO on any shift intervened to move her to the female cell block.

34. Federal prison rules forbid sexual contact between inmates or detainees and require it to be reported by staff who are aware of it. It is believed and therefore averred that John Does 1-10 BOP and staff were aware of the assaults on plaintiff, but there are no known reports.

35. It is believed and therefore averred that no reports were made by prison staff at FDC Philadelphia who knew, or had reason to know, of such assaults.

36. Plaintiff's cellmate promised to kill her on Valentine's Day, February 14, after he once again fulfilled his sexual fantasies.

37. In total she was celled approximately 288 hours with that male inmate.

38. Plaintiff was terrorized, sexually assaulted, raped, molested, beaten, and had her head battered against the metal bunk bed by her male cellmate. The edge of the metal bunk caused a large wound to open on her head. These assaults were severe and repetitive, and caused direct contact with plaintiff's genitals, breasts, mouth causing physical pain.

39. Plaintiff cried and asked for help in Spanish multiple times. There was no response from corrections officers.

40. Late on February 13th or early February 14th another inmate housed near plaintiff heard her crying. That inmate spoke Spanish and asked what was wrong, she told him.

41. That inmate called out for a BOP CO and explained in English what was happening, after some resistance a supervisor was summoned who eventually decided to take plaintiff to medical.

42.    A physical exam was conducted by medical for the purpose of determining plaintiff's gender.  That exam determined that plaintiff was indeed female as she had said all along.

43.    The medical record entry for that exam notes "hermaphrodite" a long discarded stigmatizing term formerly used to describe an intersex individual, but the doctor specifically confirmed plaintiff was female.

44.    A rape kit was not completed at any time after the assault.  It is believed and therefore averred that no sexual assault protocol was followed.

45.    Testing for STDs was not performed, which has now endangered her health.

46.    Plaintiff's head wound from the cellmate's beating, was not properly treated and it became infected.

47.    Plaintiff was immediately relocated to the female unit of FDC Philadelphia after the physical exam by medical for the purpose of confirming gender.

48.    The head injury inflicted by the male inmate continued to become more infected as medical did not provide adequate treatment.  The wound formed a large keloid-type erosion of her scalp and appears to contain pus.  She has constant headaches and other symptoms of infection which continue today.

49.    It is believed and therefore averred that the Federal Bureau of Prisons pursuant to PREA requires allegations of sexual assault and rape as described above be reported centrally and investigated immediately.

50.    Plaintiff was interviewed by investigators at some unknown time.

51.    It is believed and therefore averred that the PREA procedure was not followed. As late as the summer of 2024 it was relayed to counsel that no investigation was complete

11

because plaintiff had not filed an SF 95 Federal Tort Claims Act form.  On the contrary no "form" is required.  Plaintiff timely reported what had happened to her, in writing, to the prison. To satisfy the government, however a "form" has since been filed for both Federal Bureau of Prisons and United States Marshals.

52.     Sometime after plaintiff was moved to the female block, at least three BOP prison officials presented a document to her written in English, which was read to her by a prison employee in the kitchen who spoke some Spanish.  It cannot be fairly said she understood the writing or the purpose of the document. She was then asked by the BOP officials to sign the document and assured it was OK to sign it.  She did not sign.

53.     Plaintiff, who did not attend high school, believes and therefore avers this was a document relating to what had occurred to her as set forth herein, but the broken Spanish spoken by the prison employee and the words conveyed were not well understood or comprehended.

54.     After Plaintiff's head wound did not heal and she suffered headaches and fever, she was eventually sent to outside medical where she was given antibiotics and told to return for follow-up.  She was not taken for follow-up.  That injury is still not resolved and FCI Tallahassee has not sent her to outside medical for the injury.  She has since been moved to FMC Carswell in Fort Worth, Texas.

55.     The US Marshal's prison transport log to outside medical in Philadelphia listed plaintiff as a male inmate, which transport was months after FDC Philadelphia medical confirmed plaintiff is a female.  "Male inmate" is reflected in outside medical records derived from transport documentation by FDC Philadelphia.  Outside medical did not speak Spanish and used an online translator to try to communicate.

56.     No BOP personnel or the US Marshal has ever contacted outside medical to correct the error.  Outside medical, contracted for prison care, would not correct the record for plaintiff's representative.

57.     Upon initial admission to FDC Philadelphia, and later upon admission to the female unit, Plaintiff did not receive appropriate medical care from John/Jane Does 7-9 BOP for intersex detainees in that, for example, hormones necessary to her health and survival such as cortisol and aldosterone, were not evaluated or administered for a number of weeks, and even then the hormones given were improperly switched to estradiol pills, an estrogen hormone, which is not an appropriate therapy for a number of reasons.  This continues to be a problem at FMC Carswell.

58.     Estradiol pills carry the inherent risk of blood clots, high blood pressure, high cholesterol, migraine headaches, and diabetes among other serious health effects, some or all of which have manifested in Plaintiff when those issues had not previously been experienced.

59.     Plaintiff has developed migraines and serious, seemingly uncontrolled, diabetes since receiving estradiol, at great risk to her health which is continuing.

60.     After several months on the female unit at FDC Philadelphia as a detainee, plaintiff was transported to Maryland for sentencing, and then returned to FDC awaiting designation.

61.     Once designated, despite the prior conduct of the BOP housing her with males, the recognition of that terrible mistake and the knowledge Plaintiff is a female, the John/Jane Doe 1-10 BOP by and through the US Marshals' John/Jane Doe 3-5 USM, had her transported to FCI Tallahassee in Florida as the only female with males, other females were transported separately.  On April 1, 2025, defendant USA disclosed it was unable to identify John/Jane Doe

13

3-5 USM because plaintiff was transported using various methods from FDC Philadelphia to FCI Tallahassee between March 18- March 26, 2024 and did not give details about her transport. It is believed and therefore averred that that transport with males was deliberate. Plaintiff was in constant fear during that long trip.

62.    As a result of these events and actions or failures to act, Plaintiff has suffered severe and ongoing physical and mental injuries in excess of one million dollars.

63.    Although some counseling has been offered to Plaintiff it is inadequate to address the harm suffered.

64.    The Federal Bureau of Prisons has recognized that sexual abuse of inmates is a significant problem within its institutions.

65.    The Federal Bureau of Prisons has recognized that sexual abuse of inmates is one of the most serious forms of misconduct. The Federal Bureau of Prisons is well aware of the mandates of PREA.

66.    Plaintiff filed and exhausted her administrative remedy requirements under the Prison Litigation Reform Act facility grievance system, pursuant to the Act and the case law while she was at FDC Philadelphia; and also cooperated in the PREA investigation by FDC Philadelphia, which FDC Philadelphia appears to be treating as the tort claim investigation.

67.    Plaintiff has attempted to file several grievances at FMC Carswell for recent occurrences, similar in nature to some of those described herein, but has been refused forms. She has submitted her grievances on plain paper. She does not know if they were accepted.

68.    Plaintiff also filed a supplemental Federal Tort Claims form with the United States, the Bureau of Prisons and the US Marshal. No offer, or other remedy or denial under the FTCA of which counsel is aware has been made or received. The government contends it has six

14

months allowed for investigation ending May 25, 2025 at which time plaintiff may proceed with her tort claims.

69.     In this case, the Federal Bureau of Prisons failed to exercise ordinary care, in fact disregarded the statements of Plaintiff that she was female and failed to determine the actual gender of Plaintiff before housing her with males.

70.     The Federal Bureau of Prisons breached its duty to protect the safety of Plaintiff in its custody.  The Federal Bureau of Prisons actually created her vulnerability leading to injury.

71.     It is believed and therefore averred that the above described failures were of unconstitutional dimension and were substantial factors and the proximate cause in bringing about the injuries suffered by plaintiff.

## COUNT ONE

**Against Defendants United States of America, Federal Bureau of Prisons, Warden FDC Philadelphia, US Marshal Service, United Security, Inc.**

72.     Plaintiff repeats and realleges paragraphs 1 through 71 as though fully set forth herein.

73.     This is a Constitutional claim under the Fifth Amendment for failure to protect, due process and Equal Protection as described within this complaint.

74.     Federal prison officials and employees and federal marshals and employees are liable under the Fifth Amendment to the United States Constitution for mistreatment of pretrial detainees, including pretrial detainees who are intersex as described herein. Once sentenced, a Plaintiff is protected by the Eighth Amendment through the Fourteenth Amendment.

Failure to Protect

75.     Federal Bureau of Prison officials, including the Warden, are liable under the Fifth Amendment to the United States Constitution for acting with deliberate indifference to

15

Plaintiff's health and safety because they knew that when placing a female into a cell with a male, she faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to avoid and abate it, and for failure to protect her by failing to intervene and treat injuries received as a result.

76. For the same reasons, similarly Federal US Marshal officials and employees and United Security Inc. are liable by transporting a female detainee with apparently incomplete or questionable paperwork to FDC Philadelphia, or transporting a female inmate long distances, including over many nights from FDC Philadelphia to Tallahassee Florida, for at least some of that trip with male inmates, knowing she faced a substantial risk of serious harm and disregarded that risk and intentionally transported her with males.

77. Plaintiff asserts a failure to protect claim with respect to all BOP CO's failure to intervene in the daily assaults against her by her male cellmate when she begged for help in Spanish and by the later deliberate transport by US Marshal employees and possibly other companies, of Plaintiff, a female, with males.

78. By the fact that the risk was obvious, in the context of the Fifth Amendment failure to protect claim, it can be concluded that prison officials and US marshals officials knew of the substantial risk.

79. Federal Bureau of Prison officials, including the Warden at FDC Philadelphia and US Marshals acted with deliberate indifference to Plaintiff's health and safety because they knew that female pretrial detainees, particularly intersex inmates, faced a substantial risk of serious harm by, for example, being placed with a male cellmate on an all male floor and disregarded that risk by failing to take reasonable measures to determine her sex, protect her as described in this complaint or transporting a female inmate with males. Federal prison officials failed to

16

intervene.  It was only when another inmate who spoke Spanish insisted she be protected that she was rescued.

Due Process/Equal Protection

80.     Being violently assaulted in prison as a female pretrial detainee housed with a male inmate is cruel and unusual punishment and not part of any penalty a person presumed innocent must pay for yet-to-be determined guilt.  It is a clearly established due process right that prison officials have a duty to protect detainees from violence at the hands of others, especially as in this case, violence those officials caused by celling a female with a male.

81.     Federal prison officials violated the Equal Protection Clause of the Fifth Amendment because the lack of competent Spanish speakers on staff restricted Plaintiff's ability to communicate she is female to the admitting COs and within the men's side of the prison about her dangerous housing situation i.e. with males and a male cellmate, and the lack of qualified Spanish speakers also violates the Eighth Amendment requiring humane conditions of confinement and adequate medical care.

82.     The violation of the Prison Rape Elimination Act standards, by the Bureau of Prisons as occurred here, is evidence demonstrating that Plaintiff's clearly established constitutional rights have been violated.

83.     Both the US Marshals Service personnel and Federal Bureau of Prison officers and the agencies as well as United Securities Inc. acted unreasonably.

84.     Supervisory officials of the Federal Bureau of Prisons and the US Marshals Service, who are aware of policies and procedures relating to intersex individuals and the obligations thereunder, disregarded or ignored their specific obligations to ensure enforcement, or to discipline those who failed to enforce them, leading to the conclusion that policies and

17

procedures, including under PREA which in effect are window dressing, all of which led to the types of constitutional harm described herein.  Defendants created the opportunity that caused Plaintiff's harm.

85.     The actions of admitting BOP officers, including Musolino, placing Plaintiff with males indicates Plaintiff's treatment was gender-motivated, evidenced by their language and actions.  Placing a female in custody with a male also constitutes a hate crime under the Violence Against Women Act.

86.     Being a female detainee sexually assaulted while incarcerated and egregiously locked in a cell with a male inmate and transported with male inmates—and therefore in a position of helplessness, lack of autonomy and agency, and isolation, including no guard understanding, or ignoring, her cries for help in Spanish—caused Plaintiff's ongoing injuries and damages to be particularly severe and long-lasting.  She has sustained serious damages, including humiliation, severe emotional harms, psychological trauma, physical pain, and damaged relationships with family and friends.

87.     As a result plaintiff suffered physical and mental and emotional harm as described herein and physical and mental injuries in excess of $1,000,000.

WHEREFORE, it is respectfully requested that judgment be entered in favor of Plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies regarding intersex inmates, and particularly for pretrial detainees, for immediate appropriate medical care for Plaintiff's injuries and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

## COUNT TWO

18

**Against Defendant United States of America, Federal Bureau of Prisons and Warden FDC Philadelphia**

88.    Plaintiff repeats and realleges paragraphs 1 through 87 as though fully set forth herein.

89.    Count Two is a Constitutional Claim of Violation of the Americans With Disabilities Act Under the Fourteenth Amendment and the Commerce Clause.

90.    Federal prison officials violated the Americans with Disabilities Act, as the 2009 expansion of the ADA included impairments to reproductive and endocrine functions. Gender dysphoria is also protected under the ADA.  There is no exclusion under the ADA for intersex individuals.  The nondiscrimination standards of the ADA apply to federal employees and agencies receiving federal funds under Section 501 et seq of the Rehabilitation Act of 1973. Section 505 includes remedies and availability of attorney fees. Title V of the ADA references these provisions.

91.    The ADA relies on both the Fourteenth Amendment and the Commerce Clause of the Constitution as its constitutional basis.

92.    Federal law and the United States Constitution require that inmates receive adequate medical care.

93.    The federal agencies sued herein receive federal funds.

94.    Plaintiff was denied the benefits of defendant's medical service during her housing with males and since then by failure to treat her hormonal needs, thus causing diabetes and other conditions..

95.    The denial of medical services was by reason of her disability.

96.     Transgender and intersex inmates within the penal system constitute over 16% of inmates who identify as such.  It is likely that there are many more who simply fear disclosure, foregoing proper medical treatments.

WHEREFORE, it is respectfully requested that judgment be entered in favor of Plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies regarding intersex inmates, and particularly for pretrial detainees, to review and enforce regulations under the ADA and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

## COUNT THREE

**Against Defendant Warden FDC Philadelphia, Musolino and BOP John Does**

97.     Plaintiff repeats and realleges paragraphs 1 through 96 as though fully set forth herein.

98.     This Count asserts a Bivens action under the Fifth Amendment and due process clause.  Bivens established that the victim of a constitutional violation by a federal official has a right to recover money damages against the official in federal court despite the absence of any statute conferring such a right.  Plaintiff has a federal constitutional right to be free from gender discrimination.

99.     Bivens claims include claims of discrimination on the basis of sex, in violation of the Fifth Amendment.

100.    Defendant personnel of the Federal Bureau of Prisons, including defendant Warden of FDC Philadelphia, Musolino and defendant John Does, acting within the scope of employment and under color of federal law, statute, ordinance or regulation violated the equal

20

protection component of the due process clause of the Fifth Amendment by deliberately placing plaintiff, a female, with male inmates because of her appearance and left her on the male block for 14 days.

101.    The actions of BOP officers admitting Plaintiff to FDC Philadelphia and placement with males indicates plaintiff's treatment was gender-motivated, evidenced by their language.  Placing a female in custody with a male constitutes a hate crime under the Violence Against Women Act.

102.    Plaintiff suffered harm on the male block as described based on her sex, including sexual assault that was preventable causing physical and psychological trauma and emotional harm.

103.    As a result plaintiff suffered harm as described herein and physical and mental injuries in excess of $1,000,000.

WHEREFORE, it is respectfully requested that judgment be entered in favor of Plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intake and placement of intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

## COUNT FOUR

**Against Warden FDC Philadelphia, Musolino, John Doe 1-10 BOP Supervisory Liability**

104.    Plaintiff repeats and realleges paragraphs 1 through 103 as though fully set forth herein.

21

105.   This Count asserts a <u>Bivens</u> action.  <u>Bivens</u> established that the victims of a constitutional violation by a federal official have a right to recover money damages against the official in federal court despite the absence of any statute conferring such a right.

106.   Correctional Officers on the unit where plaintiff, a female, was housed with males were not adequately supervised, trained or disciplined by their superiors.

107.   Supervisors acted with deliberate indifference to the constitutional rights of a Spanish speaking female inmate who was housed with a male and in fear for her life. Defendants failed to provide required medical treatment.  Those supervisors failed to provide or receive adequate training, supervision and discipline of COs on the unit and thereby caused the deprivation of clearly established constitutional rights of plaintiff, including her rights under the Fifth (as a detainee) and the Eighth Amendments to the Constitution because of these conditions of confinement.

108.   Had defendant supervisors not provided grossly inadequate training, supervision and discipline of the unit COs, plaintiff, a female, would not have been housed with males, nor would she have been repeatedly sexually assaulted and addressed in a derogatory fashion.   Unit COs and their supervisors' inadequate training and supervision caused their failure of their duty to follow the law to physically and medically care for an inmate who had been wrongly designated as male.

109.   Supervisors had actual and/or constructive notice of sexual abuse of a female on a male unit.

110.   This negligent, reckless, and/or deliberately indifferent conduct under color of federal law violated their duty to supervise unit COs.

111.    Defendants were also acting within the scope of office or employment under circumstances where the defendant, if a private person, would be liable to the claimant in accordance with the law of the Commonwealth of Pennsylvania.

112.    Being sexually assaulted while incarcerated and locked in a cell with a male inmate— in a position of helplessness, lack of autonomy and agency, including no Bureau of Prisons employee understanding, or ignoring, her cries for help in Spanish—caused Plaintiff's ongoing injuries and damages to be particularly severe and long-lasting.  She has sustained serious damages, including humiliation, severe emotional harms, psychological trauma, physical pain, lasting physical scars and damaged relationships with family and friends.

113.    As a direct and proximate result of defendants' supervisor's failure to act, Plaintiff suffered harm as described herein and physical and mental injuries in excess of $1,000,000.

WHEREFORE, it is respectfully requested that judgment be entered in favor of Plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

## COUNT FIVE

**Against the United States of America, the Federal Bureau of Prisons and Its Wardens, Musolino and the United States Marshal's Service and Its Supervising Marshals**

114.    Plaintiff repeats and realleges paragraphs 1 through 113 as though fully set forth herein.

115.    Defendants' servants were acting within the scope of office or employment, under circumstances where the defendants, if a private person, would be liable to the claimant under

23

the U.S. Constitution, the Constitution of the Commonwealth and in accordance with the law of the Commonwealth of Pennsylvania as set forth herein. This Count is for negligent training and retention.

116. The individual defendants were federal employees at all relevant times in the complaint.

117. Defendants were on notice and failed to take action to prevent harm to Plaintiff by its employees.

118. Defendants had a duty to Plaintiff, who was in their custody, to prevent threats to her safety and to protect her from harm, including by housing her appropriately with females.

119. Defendants' failure to act was so apparent that co-workers and other supervisors knew or should have known what was occurring when federal employees housed a female detainee in the same cell as a male on the male side of the prison especially hearing her cry and try to explain. Similarly, if defendants failed to act if two males complained of sexual assault, that is a failure of training and a violation of PREA. Defendants were negligent in their training, retention and supervision of their employees.

120. Required admission procedures were in place to confirm the sex of the inmate by a medical doctor. These were not followed by Musolino or anyone else. The Plaintiff, who spoke only Spanish, was ignored for almost two weeks as she warned of and protested her housing with males. Defendants were negligent for not assisting a detainee in distress and/or were not properly trained in these housing procedures, in any event no procedure was followed for determining whether Plaintiff was housed improperly.

121. Defendants were negligent in that they failed to follow procedures in place to prevent the housing of females with males, or they ignored them.

24

122.    As a result of defendant's negligence, Plaintiff has suffered physical and mental injuries in excess of the jurisdictional amount.

WHEREFORE, it is respectfully requested that judgment be entered in favor of Plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

## COUNT SIX

**Against the United States of America, the Federal Bureau of Prisons and Its Wardens, Musolino and the United States Marshal's Service and Its Supervising Marshal**

123.    Plaintiff repeats and realleges paragraphs 1 through 122 as though fully set forth herein.

124.    Defendants' servants were acting within the scope of office or employment, under circumstances where the defendants, if a private person, would be liable to the claimant in accordance with the law of the Commonwealth of Pennsylvania and the Constitution of the Commonwealth and the United States.  This claim is for negligent supervision and discipline.

125.    The individual defendants were federal employees at all relevant times in the complaint.

126.    BOP policy 5334.12 was in effect in February 2023, requiring federal prisons to adopt "zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and to provide guidelines to address…illegally sexually abusive behavior…"  The United States owes a duty of care to federal prisoners under 18 U.S.C. § 4042 which states in part that the Bureau of Prisons shall "provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States."

127.    Under PREA "policies and rules for handling inmate complaints of sexual harassment and sexual assault leave Bureau of Prisons officers no discretion as to whether to follow those procedures.

128.    The John Doe superiors and co-workers who knew or should have known of their supervisees failure to act were negligent in failing to report that activity to timely cause appropriate housing and medical care to be given.  No procedures were in place, nor could there be, to avoid delay and failure to comply with and react to, PREA guidelines, yet they did not.

129.    It was within the scope of their employment to make reports of failures under PREA.

130.    Defendants' supervisors had a duty to control their employees and prevent harm to Plaintiff which duty was breached.

131.    Defendants' supervisors and co-workers who knew or should have known were negligent in failing to listen and observe and respond timely to the housing conditions and medical needs of Plaintiff.

132.    The failure of those employees to act was such that co-workers and other supervisors knew or should have known what was occurring.  No known discipline was imposed.

133.    As a result of defendants' negligence, Plaintiff has suffered physical and mental injuries in excess of the jurisdictional amount.

WHEREFORE, it is respectfully requested that judgment be entered in favor of Plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies and mandate training regarding intersex inmates, and particularly for pretrial detainees, and for declaratory relief, attorney fees, other costs and expenses deemed appropriate by the Court.

26

## COUNT SEVEN

### Against the United States of America, Musolino, the Federal Bureau of Prisons and the United States Marshal's Service

134. Plaintiff repeats and realleges paragraphs 1 through 133 as though fully set forth herein.

135. Defendants' servants were acting within the scope of office or employment, under circumstances where the defendants, if a private person, would be liable to the claimant in accordance with the U.S. Constitution, Commonwealth Constitution and the law of the Commonwealth of Pennsylvania. This claim is for negligent infliction of emotional distress resulting in physical injury.

136. The individual defendants were federal employees at all relevant times in the complaint.

137. The defendants had a duty of care to Plaintiff, a female, who was improperly housed with males at FDC Philadelphia.

138. Defendants knew or should have known that a female detainee housed with a male inmate endangered the female detainee and that the male inmate was likely to assault the female.

139. Despite actual notice or constructive notice that such housing could result in harm to a female detainee, and in fact did occur, defendants failed to prevent that assault by housing Plaintiff with a male inmate. Defendant employees of the United States breached their duty of care owed to Plaintiff by failing to protect her which unreasonably endangered Plaintiff's physical safety.

27

140.    These acts and/or omissions constituted extreme and outrageous conduct and disregarded a substantial probability of causing severe emotional distress to Plaintiff, which did cause both psychological harm and physical injuries.

WHEREFORE, it is respectfully requested that judgment be entered in favor of Plaintiff and against defendants in an amount in excess of $1,000,000, for an injunction and mandate for supervisors and higher level officials to review, update and enforce existing policies regarding intersex inmates, and particularly for pretrial detainees, to ensure no other female inmate is housed with male inmates, to assign a Spanish speaking employee to each block 24/7, to undergo training to recognize and properly supervise intersex inmates without using derogatory terminology, for appropriate medical care for intersex detainees and inmates for declaratory and injunctive relief and for attorney fees, other costs and expenses deemed appropriate by the court.

Respectfully submitted,

_____         _____
Lynanne B. Wescott, Esquire             Margaret M. Grasso, Esquire
PA ID #52928                            PA ID #75939
The Wescott Law Firm P.C.               Law Office of Margaret M. Grasso
1221 Locust Street, Suite 301           325 Chestnut Street, Suite 800
Philadelphia, PA   19107                Philadelphia, PA   19106
Phone: 215-545-0324                     Phone: 215-280-5202
Lwescott@wescottlaw.net                 Maggie@maggiegrassolaw.com